UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| MOHAMED CHBANI, | : |
| Plaintiff, | : Case No._____ |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| | : |
| EPIZYME, INC., MICHAEL F. GIORDANO, PABLO LEGORRETA, DAVID M. MOTT, CAROL STUCKLEY, KENNETH BATE, ROY A. BEVERIDGE, VICTORIA RICHON, GRANT BOGLE, KEVIN T. CONROY, and CARL GOLDFISCHER, | : JURY TRIAL DEMANDED |
| Defendants. | : |

---

Plaintiff Mohamed Chbani ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Epizyme, Inc. ("Epizyme" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which

Epizyme will be acquired by Ipsen Pharma SAS ("Ipsen"), through Ipsen's subsidiary Hibernia Merger Sub, Inc. ("Purchaser") (the "Proposed Transaction").

2. On June 27, 2022, Epizyme and Ipsen issued a joint press release announcing that they had entered into an Agreement and Plan of Merger (the "Merger Agreement") dated June 27, 2022, to sell Epizyme to Ipsen. Under the terms of the Merger Agreement, Ipsen will acquire each outstanding shares of Epizyme for: (i) $1.45 per share in cash, and (ii) one contingent value right ("CVR") per share, representing the right to receive up to $1.00 in the aggregate, per share, upon the achievement of certain milestones (the "Offer Price"). Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on July 12, 2022. The Tender Offer is scheduled to expire at one minute after 11:59 p.m., Eastern time, on August 8, 2022.

3. On July 12, 2022, Epizyme filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement, which recommends that Epizyme stockholders tender their shares in favor of the Tender Offer, omits or misrepresents material information concerning, among other things: (i) Epizyme management's financial projections, relied upon by the Company's financial advisor, MTS Securities, LLC ("MTS") in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by MTS; and (iii) the background of the Proposed Transaction. Defendants authorized the issuance of the false and misleading Recommendation Statement in violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act.

4. In short, the Proposed Transaction will unlawfully divest Epizyme's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders. To remedy defendants' Exchange

Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Epizyme's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Epizyme.

9. Defendant Epizyme is a Delaware corporation, with its principal executive offices located at 400 Technology Square, 4th Floor, Cambridge, Massachusetts 02139. Epizyme is a commercial-stage biopharmaceutical company. Epizyme's common stock is traded on the Nasdaq Global Select Market under the ticker symbol "EPZM."

10. Defendant Michael F. Giordano ("Giordano") has been a director of the Company since March 2018.

11. Defendant Pablo Legorreta ("Legorreta") has been a director of the Company since November 2019.

12. Defendant David M. Mott ("Mott") has been Chairman of the Board since April 2016 and a director of the Company since December 2009.

13. Defendant Carol Stuckley ("Stuckley") has been a director of the Company since November 2021.

14. Defendant Kenneth Bate ("Bate") has been a director of the Company since December 2014.

15. Defendant Roy A. Beveridge ("Beveridge") has been a director of the Company since November 2021.

16. Defendant Victoria Richon ("Richon") has been a director of the Company since September 2019.

17. Defendant Grant Bogle ("Bogle") has been President and Chief Executive Officer ("CEO") of the Company since August 2021, and a director since September 2019.

18. Defendant Kevin T. Conroy ("Conroy") has been a director of the Company since February 2017.

19. Defendant Carl Goldfischer ("Goldfischer") has been a director of the Company since September 2009.

20. Defendants identified in paragraphs 10 to 19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21. Ipsen is a global, mid-sized biopharmaceutical company focused on transformative medicines in Oncology, Rare Disease and Neuroscience. With Specialty Care sales of €2.6bn in FY 2021, Ipsen sells medicines in over 100 countries. Alongside its external-innovation strategy, Ipsen's research and development efforts are focused on its innovative and differentiated technological platforms located in the heart of leading biotechnological and life-science hubs: Paris-Saclay, France; Oxford, U.K.; Cambridge, U.S.; Shanghai, China. Excluding its Consumer HealthCare business, Ipsen has approximately 4,500 colleagues worldwide.

22. Ipsen Biopharmaceuticals, Inc. ("Ipsen Biopharm") is a Delaware corporation and wholly owned subsidiary of Ipsen.

23. Purchaser is a Delaware corporation and a direct wholly owned subsidiary of Ipsen Biopharm.

## SUBSTANTIVE ALLEGATIONS

**Company Background**

24. Epizyme is a fully integrated, commercial-stage biopharmaceutical company focused on treatment for cancer through novel epigenetic medicines. The Company has one approved product, TAZVERIK (tazemetostat), which was granted accelerated approval by the FDA in 2020 for epithelioid sarcoma ("ES") and FL. Epizyme seeks to maximize its effectiveness as a commercial organization to achieve adoption of TAZVERIK among as many appropriate patients as possible, including in earlier treatment lines and in combination regimens with the data to support this expanded use; to build on TAZVERIK's pipeline-in-a-drug potential; and to expand the Company's pipeline and evolving oncology portfolio, including with SET-101, Epizyme's first-in-human Phase 1/1b trial of EZM0414, a novel, first-in-class, oral SETD2 inhibitor.

25.     On May 10, 2022, Epizyme announced its first quarter 2022 financial results and business developments.  Total revenue was $8.7 million for the first quarter of 2022, an increase of 14% vs. $7.6 million for the first quarter of 2021.  Net product revenue of TAZVERIK in the U.S was $8.7 million for the first quarter of 2022, an increase of 40% vs. $6.2 million for the first quarter of 2021.  Total GAAP operating expenses were $59.6 million for the first quarter of 2022, a decrease of 17% vs. $72.0 million for the first quarter of 2021, reflecting focused efforts on streamlining operations.  Total non-GAAP adjusted operating expenses were $53.0 million for the first quarter of 2022, compared to $63.7 million for the first quarter of 2021.  Net loss attributable to common stockholders was $55.5 million, or $0.38 per share, for the first quarter of 2022, compared to $70.3 million, or $0.69 per share, for the first quarter of 2021.  The Company's cash, cash equivalents and marketable securities were $199.7 million as of March 31, 2022, compared to $176.8 million as of December 31, 2021.  Reflecting on the Company's progress and looking to the future, defendant Bogle stated:

> The relapsed or refractory follicular lymphoma treatment landscape is rapidly changing, and we believe TAZVERIK® is poised to grow at an accelerated rate as the year progresses.  We saw encouraging progress in important commercial metrics during the first quarter despite some seasonal impact related in part to the Medicare Part D drug benefit design and year-end prescription variability, which we continue to evaluate.  TAZVERIK demand experienced a strong rebound in March, and we entered the second quarter with positive momentum.  We believe that TAZVERIK has the potential to reach many more patients based on changes in the current treatment options for patients in the R/R FL market and the updated NCCN Guidelines® for FL.  We are also continuing to advance our key clinical programs and look forward to sharing updated SYMPHONY-1 data from the Phase 1b cohort at ASCO.

**The Proposed Transaction**

26.     On June 27, 2022, Epizyme and Ipsen issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

PARIS & CAMBRIDGE, MASS.--(BUSINESS WIRE)--Jun. 27, 2022--Regulatory News:

Ipsen (Euronext: IPN; ADR: IPSEY) and Epizyme (Nasdaq: EPZM) today announced that they have entered into a definitive merger agreement under which Ipsen will acquire Epizyme. The transaction was unanimously approved by both Ipsen and Epizyme Boards of Directors and is anticipated to close by the end of the third quarter of 2022, subject to the satisfaction of all closing conditions. Epizyme is a fully integrated, commercial-stage biopharmaceutical company developing and delivering transformative therapies against novel epigenetic targets for cancer patients.

The primary focus of the acquisition is on the lead medicine, Tazverik® (tazemetostat), a first-in-class, chemotherapy-free EZH2a inhibitor, which was granted Accelerated Approval by the U.S. Food and Drug Administration (FDA) in 2020. It is currently indicated for adults with relapsed or refractory follicular lymphoma (FL) whose tumors are positive for an EZH2 mutation as detected by an FDA-approved test and who have received at least two prior systemic therapies, and for adult patients with relapsed or refractory follicular lymphoma who have no satisfactory alternative treatment options, as well as for adults and pediatric patients aged 16 years and older with metastatic or locally advanced epithelioid sarcoma not eligible for complete resection. Tazverik is currently in the Phase III stage of a registrational confirmatory study (SYMPHONY-1) in combination with rituximab and lenalidomide (R2) in patients with relapsed/refractory FL who have received at least one prior therapy. Initial results from the Phase III randomized portion of this study are planned to read out in 2026.

As part of the transaction, Ipsen will also acquire Epizyme's first-in-class, oral SETD2 inhibitor development candidate, EZM0414, which was granted FDA Fast Track status and is currently under evaluation in a recently initiated Phase I/Ib trial in adult patients with relapsed or refractory multiple myeloma and diffuse large B-cell lymphoma, as well as a portfolio of preclinical programs focusing on epigenetic targets.

"Through this agreement, we will expand our assets in oncology. Ipsen's capabilities and resources in oncology combined with Epizyme's will accelerate the growth of Tazverik to achieve its full potential in follicular lymphoma patients. The strength of data support Tazverik's positioning in patients with both EZH2 mutation positive and wild-type follicular lymphoma. We are compelled by the potential of its efficacy and tolerability profile, especially for elderly and/or frail patients who are treated in the community-based setting. Furthermore, we are excited to bring on board epigenetic expertise and the SETD2 inhibitor, as well as several pre-clinical compounds into our portfolio," said David Loew, Chief Executive Officer of Ipsen.

"Epizyme was founded in 2007 with a commitment to rigorous scientific research and a vision of developing novel epigenetic therapies.  I am incredibly proud of what our team has accomplished over the past 15 years, from the approval of Tazverik to advancing our next novel investigational agent, EZM0414, to the clinic, as well as the progress made on our preclinical compounds focused on both hematologic malignancies and solid tumors," said Grant Bogle, President and Chief Executive Officer of Epizyme.  "We expect that this acquisition and Ipsen's commitment to invest in the oncology space will ensure our epigenetic pipeline continues to advance in a way we could not have done on our own to bring transformative cancer therapies to patients in need."

**Financial highlights**
The acquisition of Epizyme will immediately provide incremental sales and will leverage the U.S. commercial infrastructure.  Given the level of ongoing R&D expenses, the transaction is expected to be moderately dilutive on Ipsen's core operating income until the end of 2024.  This is in line with Ipsen's medium-term outlook regarding its strategic focus on building a high-value and sustainable pipeline through external innovation.  The dilutive impact on 2022 core operating margin will be limited, given the expected timing of the transaction.

**Transaction details**
The Board of Directors of Epizyme has unanimously approved the transaction and recommended that the stockholders of Epizyme tender their shares in the tender offer.  Royalty Pharma, Epizyme's largest stockholder with approximately 20.5% of Epizyme's total shares of common stock outstanding (on a non-diluted basis) as of the date hereof, has entered into a support agreement with Ipsen pursuant to which it has agreed to tender its shares in the tender offer.

Under the terms of the agreement and plan of merger, Ipsen, through a subsidiary, will initiate a tender offer to acquire all outstanding shares of Epizyme at a price of $1.45 per share in cash at the closing of the transaction, for an initial estimated aggregate consideration of $247 million plus one contingent value right (CVR) per share.  Each CVR will entitle its holder to deferred cash payments of $0.30 per CVR payable upon the first achievement of $250 million in aggregate net sales of Tazverik (excluding sales in Japan and Greater China) in any period of four consecutive quarters, by 31 December 2026 and $0.70 per CVR payable upon receipt of U.S. regulatory approval necessary for the commercial marketing and sale of the combination of Tazverik and $R^2$ (rituximab and lenalidomide) in second-line follicular lymphoma by 1 January 2028.  The $1.45 per share cash consideration represents a premium of approximately 144% compared to Epizyme's average closing price of $0.60 over the 30 trading days preceding announcement of the transaction.  The transaction will be fully financed by Ipsen's existing cash and lines of credit.

The closing of the tender offer will be subject to customary conditions, including the tender of shares representing at least a majority of the total number of

Epizyme's outstanding shares, the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and other customary conditions. Upon the successful completion of the tender offer, Ipsen would acquire all shares not acquired in the tender through a second-step merger for the same consideration as the tendering shareholders.

**Advisors**
Barclays is acting as exclusive financial advisor to Ipsen and Orrick Herrington & Sutcliffe LLP as legal counsel to Ipsen. Epizyme is advised by both Jefferies and MTS Health Partners, L.P., joint lead financial advisors in connection with the transaction, with WilmerHale serving as legal counsel. In addition, MTS Securities, LLC (an affiliate of MTS Health Partners, L.P.) provided an opinion to the Board of Directors of Epizyme regarding the fairness of the offer consideration to be received by the holders of Epizyme common stock in the transaction, subject to the qualifications and limitations set forth therein.

**Insiders' Interests in the Proposed Transaction**

27.     Epizyme insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Epizyme.

28.     Notably, Epizyme insiders stand to reap substantial financial benefits for securing the deal with Ipsen. The following table sets forth the value of cash payments the Company's executive officers and directors will receive in connection with tendering their shares in the Tender Offer:

| Name | Number of Shares of Common Stock | Cash Consideration for Shares of Common Stock | Contingent Consideration for Shares of Common Stock(1) |
|---|---|---|---|
| **Executive Officers and Directors** | | | |
| Grant Bogle, President, Chief Executive Officer and Director | 8,060 | $ 11,687 | $ 8,060 |
| Jerald Korn, Chief Operating Officer | — | — | — |
| Jeffery L. Kutok, M.D., Ph.D., Chief Scientific Officer | 13,542 | $ 19,635 | $ 13,542 |
| Shefali Agarwal, M.D., Consultant, Former Executive Vice President, Chief Medical and Development Officer and Acting Chief Medical and Development Officer | 50,060 | $ 72,587 | $ 50,060 |
| Kenneth Bate, Director | 8,060 | $ 11,687 | $ 8,060 |
| Roy A. Beveridge, M.D., Director | 20,341 | $ 29,494 | $ 20,341 |
| Kevin T. Conroy, Director | 53,324 | $ 77,319 | $ 53,324 |
| Michael F. Giordano, M.D., Director | 8,060 | $ 11,687 | $ 8,060 |
| Carl Goldfischer, M.D., Director(2) | 3,394,011 | $ 4,921,315 | $ 3,394,011 |
| Pablo Legorreta, Director(3) | 31,841,394 | $ 46,170,021 | $ 31,841,394 |
| David M. Mott, Director(4) | 322,453 | $ 467,556 | $ 322,453 |
| Victoria Richon, Ph.D., Director | 13,614 | $ 19,740 | $ 13,614 |
| Carol Stuckley, Director | — | — | — |
| **All of our executive officers and directors as a group (13 persons)** | 35,732,919 | $ 51,812,732 | $ 35,732,919 |

29. Moreover, under the terms of the Merger Agreement, all Company options and restricted stock units ("RSU") will be converted into the right to receive cash payments upon consummation of the Proposed Transaction. The following tables set forth the value of cash payments that Epizyme's directors and executive officers will receive in connection with the consummation of the merger pursuant to their Company equity awards:

| Name | Number of Shares subject to Company Stock Options | Number of Cash-Out Options | Cash Consideration for Cash-Out Options | Contingent Consideration for Cash-Out Options(1) | Number of In-the-Money Options | Cash Consideration for In-the-Money Options | Contingent Consideration for In-the-Money Options(1) |
|---|---|---|---|---|---|---|---|
| **Executive Officers and Directors** | | | | | | | |
| Grant Bogle, President, Chief Executive Officer and Director | 1,726,647 | — | — | — | 1,217,500 | $ 64,700 | $ 1,217,500 |
| Jerald Korn, Chief Operating Officer | 800,000 | 800,000 | $ 248,000 | $ 800,000 | — | — | — |
| Jeffery L. Kutok, M.D., Ph.D., Chief Scientific Officer | 866,904 | — | — | — | 380,000 | $ 22,800 | $ 380,00 |
| Shefali Agarwal, M.D., Consultant, Former Executive Vice President, Chief Medical and Development Officer and Acting Chief Medical and Development Officer | 1,341,837 | — | — | — | 500,000 | $ 30,000 | $ 500,000 |

10

| Name | Number of Shares subject to Company Stock Options | Number of Cash-Out Options | Cash Consideration for Cash-Out Options | Contingent Consideration for Cash-Out Options(1) | Number of In-the-Money Options | Cash Consideration for In-the-Money Options | Contingent Consideration for In-the-Money Options(1) |
|---|---|---|---|---|---|---|---|
| Kenneth Bate, Director | 175,710 | 41,006 | $ 36,495 | $ 41,006 | — | — | — |
| Roy A. Beveridge, M.D., Director | 124,304 | 41,006 | $ 36,495 | $ 41,006 | — | — | — |
| Kevin T. Conroy, Director | 150,711 | 41,006 | $ 36,495 | $ 41,006 | — | — | — |
| Michael F. Giordano, M.D., Director | 138,211 | 41,006 | $ 36,495 | $ 41,006 | — | — | — |
| Carl Goldfischer, M.D., Director | 183,043 | 41,006 | $ 36,495 | $ 41,006 | — | — | — |
| Pablo Legorreta, Director | 129,986 | 41,006 | $ 36,495 | $ 41,006 | — | — | — |
| David M. Mott, Director | 233,043 | 41,006 | $ 36,495 | $ 41,006 | — | — | — |
| Victoria Richon, Ph.D., Director | 132,653 | 41,006 | $ 36,495 | $ 41,006 | — | — | — |
| Carol Stuckley, Director | 124,304 | 41,006 | $ 36,495 | $ 41,006 | — | — | — |
| All of our executive officers and directors as a group (13 persons) | 6,127,353 | 1,169,054 | $ 576,458 | $ 1,169,054 | 2,097,500 | $ 117,500 | $ 2,097,500 |

| Name | Number of Company RSUs | Cash Consideration for Company RSUs | Contingent Consideration for Company RSUs(1) |
|---|---|---|---|
| **Executive Officers and Directors** | | | |
| Grant Bogle, President, Chief Executive Officer and Director | 175,000 | $ 253,750 | $ 175,000 |
| Jerald Korn, Chief Operating Officer | — | — | — |
| Jeffery L. Kutok, M.D., Ph.D., Chief Scientific Officer | 81,021 | $ 117,480 | $ 81,021 |
| Shefali Agarwal, M.D., Consultant, Former Executive Vice President, Chief Medical and Development Officer and Acting Chief Medical and Development Officer | 107,292 | $ 155,573 | $ 107,292 |

| Name | Number of Company RSUs | Cash Consideration for Company RSUs | Contingent Consideration for Company RSUs(1) |
|---|---|---|---|
| Kenneth Bate, Director | 8,994 | $ 13,041 | $ 8,994 |
| Roy A. Beveridge, M.D., Director | 25,696 | $ 37,259 | $ 25,696 |
| Kevin T. Conroy, Director | 8,994 | $ 13,041 | $ 8,994 |
| Michael F. Giordano, M.D., Director | 8,994 | $ 13,041 | $ 8,994 |
| Carl Goldfischer, M.D., Director | 8,994 | $ 13,041 | $ 8,994 |
| Pablo Legorreta, Director | 8,994 | $ 13,041 | $ 8,994 |
| David M. Mott, Director | 8,994 | $ 13,041 | $ 8,994 |
| Victoria Richon, Ph.D., Director | 8,994 | $ 13,041 | $ 8,994 |
| Carol Stuckley, Director | 25,696 | $ 37,259 | $ 25,696 |
| **All of our executive officers and directors as a group (13 persons)** | 477,663 | $ 692,608 | $ 477,663 |

30. Further, if they are terminated in connection with the Proposed Transaction, Epizyme's named executive officers will receive substantial cash severance payments, as set forth in the following table:

| Name | Cash(2) | Equity(3) | Perquisites(4) | Total |
|---|---|---|---|---|
| Grant Bogle, President, Chief Executive Officer and Director | $1,670,625 | $1,710,950 | $ 24,635 | $3,406,210 |
| Shefali Agarwal, M.D., Consultant, Former Executive Vice President, Chief Medical and Development Officer and Acting Chief Medical and Development Officer | $ 940,275 | $ 792,865 | $ 0 | $1,733,140 |
| Jeffery L. Kutok, M.D., Ph.D., Chief Scientific Officer | $ 866,400 | $ 601,301 | $ 17,483 | $1,485,186 |
| Robert Bazemore, Former President and Chief Executive Officer | $ 0 | $ 271,382 | $ 0 | $ 271,382 |

**The Recommendation Statement Contains Material Misstatements or Omissions**

11

28.     The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Epizyme's stockholders.  The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in the Tender Offer or seek appraisal.

29.     Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Epizyme management's financial projections, relied upon by the Company's financial advisor MTS in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by MTS; and (iii) the background of the Proposed Transaction.

*Material Omissions Concerning Epizyme Management's Financial Projections*

30.     The Recommendation Statement omits material information regarding Company management's financial projections relied upon by MTS for its financial analyses.

31.     For example, the Recommendation Statement sets forth that the Company's management projections "reflect probability adjustments based on the expected development and commercialization of Epizyme's products and product candidates."  Recommendation Statement at 46.  The Recommendation Statement fails, however, to disclose the assumptions underlying the probability adjustments to the Company's management projections based on the expected development and commercialization of Epizyme's products and product candidates.

32.     The omission of this information renders the statements in the "Certain Projected Information" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning MTS' Financial Analyses*

33. The Recommendation Statement describes MTS' fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of MTS' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Epizyme's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on MTS' fairness opinion in determining whether to tender their shares in the Tender Offer or seek appraisal.

34. With respect to MTS' *Company Discounted Cash Flow Analysis ("DCF")*, the Recommendation Statement fails to disclose: (i) Epizyme's terminal value; (ii) MTS' rationale for applying a terminal growth rate of -75% to 0%; (iii) MTS' rationale for assuming a revenue achievement range of 65% to 100%; and (iv) the inputs and assumptions underlying the discount rates ranging from 13.00% to 17.00%.

35. The omission of this information renders the statements in the "Opinion of the Company's Financial Advisor" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

36. The Recommendation Statement fails to disclose material information concerning the background of the Proposed Transaction.

37. For example, the Recommendation Statement fails to disclose the specific details of all employment and retention-related discussions and negotiations that occurred between Ipsen and Epizyme's executive officers, including who participated in all such communications, when they occurred and their content. The Recommendation Statement further fails to disclose whether any of Ipsen's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

38. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

39. The omission of this information renders the statements in the "Background of the Offer" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

40. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other Epizyme stockholders will be unable to make an informed decision whether to tender their shares in the Tender Offer or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations
of Section 14(d) of the Exchange Act and SEC Rule 14d-9**

31. Plaintiff repeats all previous allegations as if set forth in full.

32. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Epizyme stockholders to tender their shares in the Tender Offer.

33. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

34. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

35. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

36. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the other stockholders of Epizyme, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

37. Plaintiff repeats all previous allegations as if set forth in full.

38. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances

under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer.

39. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender her shares pursuant to the Tender Offer or seek appraisal.

40. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender her shares or seek appraisal.

### COUNT III

**Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

41. Plaintiff repeats all previous allegations as if set forth in full.

42. The Individual Defendants acted as controlling persons of Epizyme within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Epizyme and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

45. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

46. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

47. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Epizyme, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: July 28, 2022

**Respectfully submitted,**

By _____
Shallom Engel
**Engel Law PLLC**
2329 Nostrand Avenue, Suite 100
Brooklyn, NY 11210
Telephone: (718) 880-8595
Email: shallom@engellawpllc.com

*Attorneys for Plaintiff*